UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Abdul H.S., | Civ. No. 26-1461 (JWB/DLM) |
| Petitioner, | |
| v. | |
| Pamela Jo Bondi, *in her official capacity as Attorney General of the United States*; Kristi Noem, *in her official capacity as Secretary of the Department of Homeland Security*; Todd Lyons, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; and David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Craig S. Coleman, Esq., and John P. Mandler, Esq., Faegre Drinker Biddle & Reath LLP, counsel for Petitioner.

David W. Fuller, Esq., and Matthew Isihara, Esq., United States Attorney's Office, counsel for Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) if the noncitizen entered the United States from Afghanistan, was granted parole as part of the United States's resettlement effort, and that parole has expired. The answer is no. Because Petitioner Abdul H.S. is already in the country, not seeking admission at the Nation's borders or ports of entry or "arriving in the United States," Respondents cannot subject him to mandatory detention under § 1225.

Although Respondents were ordered to answer with a memorandum explaining their position and affidavits and exhibits as needed to establish the lawfulness of Petitioner's detention (*see* Doc. No. 4), Respondents limited their response to two pages stating they assert all arguments raised in *Avila v. Bondi*, No. 25-3248 (8th Cir. docketed Nov. 10, 2025) and *Buenrostro-Mendez v. Bondi*, Civ. No. 25-20496, __ F.4th __ (5th Cir. Feb. 6, 2026). (*See* Doc. No. 5.)

Respondents' broad reading of § 1225(b)(2) has been often rejected in this District, regardless of whether the petitioner entered without inspection, or was initially detained at the border and released. *See, e.g.*, *Avila v. Bondi*, Civ. No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025), *appeal docketed*, No. 25-3248 (Nov. 10, 2025); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). And § 1225(b)(1) does not apply either because Petitioner is not a noncitizen "who is arriving in the United States." *See, e.g.*, *Coalition for Humane Imm. Rts. v. Noem*, 805 F. Supp. 3d 48 (D.D.C. 2025); *Rodriguez-Acurio v. Almodovar*, Civ. No. 2:25-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025).

Petitioner was already in the country when he was detained by Immigration and Customs Enforcement ("ICE"). Thus, § 1225(b) cannot authorize his detention. The Petition is granted to the extent it seeks Petitioner's release.

## BACKGROUND

Petitioner is a citizen of Afghanistan. (*See* Doc. No. 1, Petition ¶¶ 3, 18.) The

United States military evacuated him out of Afghanistan on or about August 19, 2021, as part of the expedited resettlement effort called Operation Allies Welcome / Operation Allies Refuge ("OAW/OAR"), which commenced after the United States concluded its participation in the war in Afghanistan. (*Id.* ¶¶ 3, 28–29, 36, 42.) Petitioner was brought to the United States to escape political violence perpetrated by the Taliban. (*Id.* ¶ 38.)

The United States brought Petitioner to Philadelphia, Pennsylvania in October 2021, and released him on parole to pursue a claim for asylum, withholding, and relief under the Convention Against Torture. (*Id.* ¶¶ 3, 36, 42.) Before being granted parole, Petitioner underwent rigorous screening, including biometric and biographic screening. (*Id.* ¶ 76.) On July 14, 2023, Petitioner applied for re-parole, which was granted on September 11, 2023. (*Id.* ¶¶ 4, 44.)

On October 3, 2023, Petitioner timely filed an application for asylum. (*Id.* ¶¶ 3, 5, 45.) His asylum interview occurred on February 2, 2024, but he has not yet received a ruling. (*Id.* ¶¶ 5, 18, 37, 45, 61, 78.) During this time, Petitioner has worked and resided in Minneapolis, Minnesota and complied with all laws and legal requirements. (*Id.* ¶¶ 9, 18, 43.) He has no criminal record. (*Id.* ¶¶ 43, 69.) His extended parole expired on October 13, 2025. (*Id.* ¶¶ 10, 87.)

On January 21, 2026, ICE agents arrested Petitioner without a warrant while he was parked outside a grocery store. (*Id.* ¶¶ 6, 46–50, 56.) He was flown to El Paso, Texas within 48 hours of his arrest, and was not given access to counsel before he was flown out of state. (*Id.* ¶¶ 6, 53, 55.) He has since remained in custody at the Camp East Montana detention facility. (*Id.* ¶¶ 6, 55.)

## DISCUSSION

**I.   Legal Standard**

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

**II.   Analysis**

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which

4

immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention in the case of a noncitizen "seeking admission." *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149, 1152.

8 U.S.C. § 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents did not include a detailed response to Petitioner's claim that § 1225(b) does not apply to him. They instead rely on the arguments asserted in *Avila*, 2025 WL 2976539, at *5, and the recent decision in *Buenrostro-Mendez*, Civ. No. 25-20496, __ F.4th __[1], to support their assertion that § 1225(b)(2) authorizes the detention of certain "applicants for admission" pending removal proceedings.

The vast majority of district courts considering that assertion have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens present in the interior of the country like Petitioner. *See, e.g.*, *Avila*, 2025 WL 2976539, at *5–7; *Santuario v. Bondi*, Civ. No. 25-4296 (JRT/JFD),

---

[1] Respondents cite *Buenrostro-Mendez* for the proposition that § 1225(b)(2)(A) mandates detention without bond for noncitizens encountered in the interior. This Court is not persuaded. That interpretation turns "seeking admission" into a perpetual status rather than a present act tied specifically to inspection or entry. Read in context of the INA as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 1226 governs detention of noncitizens already present in the United States pending removal proceedings.

5

2025 WL 3469577, at *2 (D. Minn. Dec. 2, 2025); *N.A.M. v. Noem*, Civ. No. 25-4737 (JRT/EMB), 2025 WL 3754145, at *1 (D. Minn. Dec. 29, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken

with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688.

Although Respondents do not explicitly invoke it here, they have cited § 1225(b)(1) in cases with similar fact patterns as Petitioner. Section 1225(b)(1) provides for expedited removal and mandatory detention in the case of a noncitizen "who is arriving in the United States" and is inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7). *Id.* § 1225(b)(1)(A)(i). In Respondents' view, once a noncitizen's parole has expired, he reverts back to being an "arriving alien" and is inadmissible pursuant to 8 U.S.C. § 1182(a)(7), which then allows for mandatory detention under § 1225(b)(1).

Any argument that a noncitizen like Petitioner falls within § 1225(b)(1)'s detention scheme contravenes both the language and structure of the statute. That section's detention provisions only apply if Petitioner is subject to the asylum review procedures initiated at the time of arrival to the country. Those review procedures only apply if Petitioner first qualifies as either "an alien . . . who is arriving in the United States" or "an alien . . . who has not been admitted or paroled into the United States." Even if Petitioner is considered an "arriving alien" now that his parole has expired, § 1225(b)(1) by its plain language does not apply to an "arriving alien"—it applies to "an alien . . . who is arriving in the United States." Congress could have used the phrase "arriving alien" but opted instead to use the phrase "who is arriving." Reading "arriving alien" into the provision would render the actual language meaningless.

A number of other districts have held that § 1225(b)(1)(A)(i) does not authorize

7

mandatory detention of a parolee, even one whose parole has expired. *See, e.g.*, *Coalition for Humane Imm. Rts.*, 805 F. Supp. 3d 48; *Rodriguez-Acurio*, 2025 WL 3314420. Although these opinions are not binding, their analysis is persuasive and aligns with this Court's view of the structure and plain meaning of § 1225(b)(1). At bottom, the terms "arriving," "arrival," and "arrive," which appear throughout § 1225 and are not defined, do not mean an ongoing status that continues after reaching the United States. *See Rodriguez-Acurio*, 2025 WL 3314420, at *20; *see also Coalition for Humane Imm. Rts.*, 805 F. Supp. 3d at 90. Those terms do not cover a noncitizen who had already approached the United States, undergone inspection, and was granted parole to enter the country. *See Coalition for Humane Imm. Rts.*, 805 F. Supp. 3d at 90–91. This understanding has been echoed across district courts. *See, e.g.*, *E.V. v. Raycraft*, Civ. No. 4:25-2069, 2025 WL 2938594, at *4 (N.D. Ohio Oct. 16, 2025) (listing cases).

The analysis here is straightforward whether considering § 1225(b)(1) or (b)(2) as the source of detention authority. Petitioner arrived in the United States in 2021 and has since lived in the country for more than four years. When ICE arrested him in Minnesota, he was in the interior of the country, not at a port of entry. Being arrested on January 21, 2026, did not transform Petitioner into a noncitizen "seeking admission" at the border. Nor did the expiration of his parole revert him to a noncitizen "who is arriving" to the country. *See, e.g.*, *Qasemi v. Francis*, Civ. No. 25-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) ("He has already arrived, was paroled, entered, and has now been present in the United States for over a year. None of that is changed by the fact that he has not been formally admitted."). Petitioner was arrested while inside the country

and, thus, to the extent that Petitioner is subject to detention, that detention would be pursuant to § 1226. Even so, there is no evidence in the record that Respondents properly invoked that authority to detain Petitioner here.

The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Allowing Respondents to toggle between detention regimes would collapse the statutory structure Congress enacted and render § 1226 largely superfluous. While Congress may extend detention authority by statute, the courts and the Executive Branch cannot.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 at 6 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 at 7 (D. Minn. Dec. 19, 2025). Thus, he is entitled to a writ of habeas corpus that grants his immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more because it addresses the lawfulness of custody itself, not the adequacy of

9

procedures that might attend some other, uninvoked challenge to detention. *See Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995).

Respondents have not produced a warrant or any other exhibit that sets forth the proper basis for Petitioner's detention under § 1226, nor have they shown how they otherwise followed the procedures for properly detaining Petitioner under that section. It remains clear through Respondents' answer that they continue to assert that § 1225, not § 1226, provides them the authority to detain Petitioner on January 21, 2026. As explained above, § 1225 is not a lawful basis for detention. And for detention that lacks a lawful predicate, release is an appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, his Petition for Writ of Habeas Corpus is granted on that basis, and the other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.  Petitioner Abdul H.S.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.  **Release.** Respondents shall immediately release Petitioner from custody. He must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including

but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3. **Notice.** Respondents shall file an update on the status of Petitioner's release by 1:25 p.m. on February 22, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5. Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 20, 2026  
Time: 1:25 p.m.

*s/ Jerry W. Blackwell*  
JERRY W. BLACKWELL  
United States District Judge